UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ALEXANDER,

    Plaintiff,

v.

COUNTY OF SAN MATEO, et al.,

    Defendants.

Case No. 20-cv-05179-RS

**ORDER DENYING TRO MOTION AND GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

*Pro se* plaintiff Michael Alexander ("Alexander") wants to go to the hospital. He does not, however, want to comply with certain COVID-19 related measures that defendant Daly City Clinic (the "DCC"), along with medical centers the world over, currently requires of all visitors, patients, and staff. The professed urgency of his ailments notwithstanding, Alexander therefore has elected to mount a lawsuit against the DCC, the County of San Mateo, and some twenty-odd additional defendants (collectively, "Defendants"). This effort is misguided: DCC's insistence that Alexander, before entering its facilities, (i) wear a mask, (ii) have his temperature taken, and (iii) submit to a non-invasive symptom screening is not unlawful. More specifically, these policies (collectively, the "Screening Policy"), which the County of San Mateo has prescribed for all its healthcare facilities, neither violate Alexander's Fifth and Fourteenth Amendment rights nor conflict with otherwise governing law. Because Alexander has failed to allege circumstances that might disturb this conclusion, his motion for preliminary injunctive relief is denied; his other motions, styled as "Motion[s] to Appoint Counsel" but arguing lengthily on the merits, similarly

are denied; and his complaint is dismissed without leave to amend.

## II. BACKGROUND

Alexander has various medical conditions, and requires the use of a wheelchair. On July 15, 2020, he went to the DCC in order to have a "specialist examine [him] for the potential loss of a sensory organ." Complaint at 17. At the time, Alexander had "never been seen for th[is] medical issue before," and there was thus "very little, if any, record[]" of the malady for which he sought treatment. *Id.*

As Alexander approached the clinic's entrance, DCC staff informed him that his admission into the building was contingent on Screening Policy compliance. Rather than agreeing to this arrangement, Alexander threw a tantrum: he blocked the DCC's main doorway, rammed his wheelchair into a DCC employee, and yelled obscenely at passersby. This behavior lasted two hours. Eventually, the clinic's manager had to inform Alexander directly that he would not, in any event, be allowed in without following the Screening Policy. Only then did Alexander leave.

By requiring all persons entering County health care facilities to use a mask, San Mateo's Screening Policy adheres to California Governor Gavin Newsom's June 18, 2020 mandate (the "Governor's Order") that "[p]eople in California must wear face coverings when they are . . . [o]btaining services from the healthcare sector in settings including . . . a hospital, pharmacy, [or] medical clinic . . . .";[1] by requiring all such persons to be checked for a fever and other COVID-19 symptoms, the Screening Policy adheres to guidelines issued by the Center for Disease Control and Prevention (the "CDC guidance").[2] Even so, on July 28, 2020 Alexander filed this action, targeting DCC's use of the Screening Policy in both a motion for emergency injunctive relief and

---

[1] *See* June 18, 2020 CA Governor's Order at 1, available at https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf.

[2] *See* July 15, 2020 CDC Guidance, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html (advising healthcare professionals to "[s]creen everyone . . . entering the healthcare facility for symptoms consistent with COVID-19," including "[a]ctively taki[ng] their temperature").

accompanying complaint.

Although the precise contours of his objections are challenging to discern, Alexander's filings apparently distill to three contentions. First, proceeding on the notion that the unfettered right to obtain healthcare—that is, to receive treatment at medical centers that follow *his* standards—is cognizable under the Due Process Clause, Alexander suggests the Screening Policy violates that right. Second, invoking the Fourteenth Amendment's guarantee of equal protection under law, Alexander urges that the Screening Policy discriminates against disabled persons and "other identically situated parties, disabled or not, who decline the screening process . . . ." Complaint at 4. Finally, stressing distinctions between the Screening Policy and the Governor's Order, Alexander seems to claim the former is preempted by the latter. Defendants oppose, countering that Alexander has not advanced a recognized due process interest, cries discrimination in the face of a patently neutral regime, and fails to demonstrate the Screening Policy's preemption.

### III. LEGAL STANDARD

#### A. Preliminary Injunctive Relief

To obtain preliminary injunctive relief, the moving party bears the heavy burden of demonstrating that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008). Alternatively, if the moving party can demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are "serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks and citations omitted).

#### B. Sufficiency of Pleadings

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss for failure to meet this

1  standard may be based either on the "lack of a cognizable legal theory" or on "the absence of
2  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901
3  F.2d 696, 699 (9th Cir. 1990).

### IV. DISCUSSION

**A. Due Process Clause**

Claims under the Due Process Clause may be either procedural or substantive in nature. To sustain a procedural due process claim, a plaintiff "must plausibly allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Franceschi v. Yee,* 887 F.3d 927, 935 (9th Cir. 2018) (internal quotation marks and citation omitted). By contrast, substantive due process claims focus on whether a given liberty interest may be infringed at all, "no matter what process is provided . . . ." *Witt v. Dep't of Air Force,* 527 F.3d 806, 817 (9th Cir. 2008) (internal quotation marks and citation omitted). These two types of claims share a threshold requirement: "the plaintiff's showing of a liberty or property interest protected by the Constitution." *Engquist v. Oregon Dep't of Agr.,* 478 F.3d 985, 996 (9th Cir. 2007) (internal quotation marks and citation omitted), *aff'd,* 553 U.S. 591 (2008).

Alexander stumbles at this threshold. In essence, Alexander's due process arguments rely upon the notion that his ability to pursue medical treatment free of any obstacle he may find disagreeable is a "liberty or property interest protected by the Constitution." *Id.* Put bluntly, he is mistaken. Beyond certain well-defined circumstances—including, most prominently, the opportunity to obtain reproductive services and the provision of medical services to prisoners—an individual's unobstructed access to healthcare generally does not implicate any actionable Due Process Clause interest. *Compare Roe v. Wade,* 410 U.S. 113, 153 (1973) (locating a woman's privacy-based right to terminate pregnancy under the Fourteenth Amendment), *and Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (reiterating the government's Eighth Amendment obligation to provide "adequate food, clothing, shelter, and medical care" for inmates), *with Harris v. McRae*, 448 U.S. 297, 317-18 (1980) (cabining the Due Process Clause's "protection against government interference with freedom of choice" to certain clearly enumerated contexts, of which access to

United States District Court
Northern District of California

general healthcare is not one). Because those circumstances are absent here, Alexander's requests for relief under a due process framework fail to relay plausibly a "cognizable legal theory," much less a likelihood of his success on the merits. *Balistreri,* 901 F.2d at 699.

### B. Equal Protection Clause

Alexander's Equal Protection Clause assertions are likewise beyond repair. The Fourteenth Amendment's guarantee of equal protection under law "ensures that all persons similarly situated should be treated alike." *Engquist*, 478 F.3d at 992 (internal quotation marks and citation omitted). State action that "neither proceeds along suspect lines nor infringes fundamental constitutional rights is subject to rational basis review and, as such, does not violate the Equal Protection Clause if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Franceschi,* 887 F.3d at 940 (internal quotation marks and citation omitted). "Generally speaking, laws that apply evenhandedly to all unquestionably comply with the Equal Protection Clause." *Vacco v. Quill,* 521 U.S. 793, 800 (1997) (internal quotation marks and citation omitted). As discussed above, *see* Part IV.A, *supra,* DCC's decision to predicate care on its patients' Screening Policy compliance in no way implicates those patients' "fundamental constitutional rights . . . ." *Franceschi,* 887 F.3d at 940. To make out an Equal Protection claim, Alexander thus must demonstrate that DCC's implementation of the Screening Policy "proceeds along suspect lines" for which no "reasonably conceivable state of facts" can furnish a rational basis. *Id.*

He cannot clear this hurdle. In July of 2020, while COVID-19 continued to ravage families, communities, and nations everywhere, Alexander had a melt down over a publicly-funded medical clinic's best efforts to stop the disease's spread. Those efforts comprised, in pertinent part, DCC's conformance to a county-wide Screening Policy obliging *every person*— patient, visitor, and staff alike—to wear a mask, have his or her temperature taken, and submit to a non-invasive health screening. The first of these criteria reflected compliance with the Governor's Order; the latter two adopted freshly-issued CDC guidance. Contrary to Alexander's protestations, the only "classification" discernible from the Screening Policy is humans, of any ilk, attempting to

enter a San Mateo County medical building. *Franceschi,* 887 F.3d at 940 (internal quotation marks and citation omitted). On these facts, which convey a California community's quintessentially "evenhanded[]" (and unmistakably rational) response to an evolving public health crisis, there is simply no Equal Protection Clause issue to be had. *Vacco*, 521 U.S. at 800. Alexander's corresponding arguments under the Fourteenth Amendment accordingly are without merit.

**C. Preemption**

Finally, and reaching the outermost bounds of any legal bases his filings can be construed to raise, Alexander's preemption claims are also irretrievably deficient. Under controlling Ninth Circuit precedent, San Mateo County's Screening Policy is only preempted by California law if it "duplicates, contradicts, or enters an area fully occupied" by state legislation. *First Resort, Inc. v. Herrera,* 860 F.3d 1263, 1280 (9th Cir. 2018) (internal quotation marks and citation omitted). A local rule "is duplicative of general law when it is coextensive therewith," and "California courts have largely confined the duplication prong of the state preemption test to penal ordinances." *Id.* (internal quotation marks and citations omitted). Because the Screening Policy is non-penal, and goes beyond the Governor's Order in adopting CDC guidance, Alexander's difficult-to-track preemption thesis necessarily turns upon whether it "contradicts, or enters an area fully occupied" by the Governor's Order. *Id.*

It does neither. Over the course of three pages, the Governor's Order merely set forth when face coverings must be worn, by whom, and what constitutes a proper face covering. There is no plausible reading of this document that renders it contradictory to the Screening Policy, or extracts from it any manner of intent to "fully occup[y]" the arena of COVID-19 emergency response. *Id.* Like his other positions, Alexander's preemption stance, to the degree it can be understood, is consequently untenable.

**V. CONCLUSION**

In short, Alexander's voluminous briefing of this controversy has not produced anything that might support federal judicial intervention. Consistent with that conclusion, his TRO motion, and all his subsequent motions, therefore are denied. So too for his complaint, which is dismissed

with prejudice, as it "could not be saved by any amendment." *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002). The Clerk of the Court is hereby instructed to close this case, and no further filings from Alexander in connection with this matter shall be entertained.

**IT IS SO ORDERED**.

Dated: October 6, 2020

RICHARD SEEBORG
United States District Judge

ORDER DENYING TRO MOTION & GRANTING MOTION TO DISMISS
CASE NO. 20-cv-05179-RS
7